Filed 12/23/25  In re J.C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D086142 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4764) |
| v. | |
| B.E., | |
| Defendant and Respondent; | |
| J.C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Affirmed.

Robert Francis McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Caitlin E. Howard, under appointment by the Court of Appeal, for Defendant and Respondent.

No appearance by Plaintiff and Respondent.

## INTRODUCTION

J.C. (Father) appeals from juvenile court orders terminating dependency jurisdiction over his child, J.C., and awarding joint legal custody to Father and B.E. (Mother) and primary physical custody to Father. Father does not challenge the termination of dependency jurisdiction or the order of primary physical custody. His sole contention on appeal is that the juvenile court abused its discretion by awarding joint legal custody to Father and Mother rather than sole legal custody to Father, as he requested. Finding no abuse of discretion, we affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

*Initiation of Dependency Proceedings and Detention Hearing*

Mother gave birth to J.C. in December 2021. At that time, Mother and J.C.'s umbilical cord tissue tested positive for methamphetamine, cocaine, and THC, and J.C. tested positive for cocaine. Hospital staff notified the San Diego County Health and Human Services Agency (Agency) of the positive

---

[1] Mother filed a notice of appeal, followed by a single brief combining her opening brief with her respondent's brief. In the opening brief portion, Mother did not raise any arguable issues for review but, instead, requested we exercise our discretion to review the entire record on appeal pursuant to *In re Sade C.* (1996) 13 Cal.4th 952 and *Anders v. California* (1967) 386 U.S. 738. In addition, Mother requested the opportunity to file a pro per supplemental brief raising any arguable issues for appellate review. Because Mother did not file a supplemental brief raising any arguable issues, we dismissed her appeal pursuant to *In re Sade C.,* at page 994. Accordingly, Father's appeal is all that remains for our review.

2

drug tests, and the Agency implemented a safety plan for the care of J.C. Mother agreed to place J.C. in the care of a maternal aunt and to an out-of-home voluntary case.

The Agency attempted to contact Father multiple times between December 2021 and April 2022 but was unsuccessful. Mother entered drug treatment but failed to abstain from drug use.

On April 29, 2022, the Agency filed a juvenile dependency petition on behalf of J.C. pursuant to Welfare and Institutions Code[2] section 300, subdivision (b). The petition cited the positive drug tests of Mother and J.C. at the time of J.C.'s birth and Mother's admission to use of controlled substances during pregnancy and after giving birth. The petition also stated, "[t]he child's alleged father is unavailable for the child's care and protection." As a result, the Agency concluded there was a substantial risk that J.C. would suffer serious physical harm or illness due to the parents' failure or inability to care for or protect J.C. adequately. In the subsequent detention report, the Agency reported Mother had consistent supervised visits with J.C. and during visitation she was attentive and met J.C.'s needs. Nevertheless, Mother had been unable to remain sober. For this reason, the Agency recommended J.C. be detained and continued in the care of his maternal aunt.

At the detention hearing in May 2022, the juvenile court found the Agency had made a prima facie showing in support of its petition and detained J.C. in the home of his maternal aunt. The court further ordered supervised visitation and reunification services to Mother and directed the

---

[2]     All statutory references are to the Welfare and Institutions Code unless indicated otherwise.

Agency to conduct a reasonable search to locate and notify Father of the proceedings.

Throughout May 2022, the Agency again made multiple unsuccessful attempts to contact Father.

## II.

*Jurisdictional and Dispositional Hearing Through Post-Disposition Review Orders*

At the contested jurisdiction and disposition hearings in June 2022, the juvenile court found true the detention petition's allegations, declared J.C. a dependent of the court, placed him in the home of his maternal aunt, and ordered supervised visitation and reunification services for Mother. It also found the Agency had conducted a reasonable search to locate and notify Father of the proceedings.

In the six-month review report in December 2022, the Agency reported Mother was engaged in drug treatment, had maintained consistent quality visits with J.C., and had completed parenting classes. She had not demonstrated her sobriety, however, as evidenced by multiple diluted drug tests and missed tests. At the January 2023 hearing, pursuant to the Agency's recommendation, the juvenile court continued J.C. as a dependent of the court with placement in the home of his maternal aunt.

In its report for the July 2023 12-month review hearing, the Agency recommended that J.C. remain a dependent of the court and in the home of the maternal aunt, and that Mother's reunification services be terminated. According to the report, Mother's whereabouts were unknown at that time, she had failed to maintain communication with the Agency, and she was not compliant with drug treatment and had multiple positive drug tests. J.C.'s maternal aunt informed the Agency, however, that Mother maintained

4

biweekly supervised visits with J.C. and she was attentive and well-bonded with J.C. The report also indicated Father had been in contact with J.C.'s maternal aunt and Father was provided contact information for the Agency.

At the hearing, the juvenile court adopted the Agency's recommendations, thereby continuing J.C.'s placement in the home of his maternal aunt and terminating Mother's reunification services but maintaining Mother's supervised visitation. The court further ordered the Agency to continue its efforts to locate Father and notify him of the proceedings. The court set the matter for a hearing pursuant to section 366.26.

### III.

### *Father's First Appearance*

On December 21, 2023, Father contacted the Agency by email, indicating a desire to take custody of J.C. Father made his first appearance before the juvenile court on January 8, 2024. On that court date, the Agency filed a section 366.26 report, recommending the court appoint J.C.'s maternal aunt as his legal guardian with supervised visitation to Mother and Father, and terminate jurisdiction. The court ordered Father to submit to genetic testing and continued the section 366.26 hearing.

The genetic testing confirmed Father is J.C.'s biological parent.

### IV.

### *Father's Motions To Vacate Jurisdictional and Dispositional Orders*

In February 2024, Father filed a motion to vacate the juvenile court's jurisdictional and dispositional orders pursuant to section 388 and *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 483, alleging changed circumstances in that Father had then been noticed of the dependency proceedings. The Agency continued to recommend that J.C.'s maternal aunt

5

be appointed as legal guardian due to the strong bond he had formed with his maternal aunt, in contrast to having only visited with Father four times since his birth.

In May 2024, the court found Father had made a prima facie showing of changed circumstances to support his motion and set an evidentiary hearing. The court ordered supervised visitation with Father.

In July 2024, the juvenile court held hearings pursuant to section 366.26 and 388. During the proceedings, the parties came to a settlement agreement. Pursuant to the agreement, Father withdrew his section 388 motion, and the court ordered legal guardianship to J.C.'s maternal aunt with structured visitation to Father.

In December 2024, Father filed a second section 388 motion, requesting that the court withdraw the letters of guardianship for J.C.'s maternal aunt and place J.C. in Father's care, or, in the alternative, increase Father's visitation time. Father alleged circumstances had changed since his prior section 388 motion in that he had been allowed more regular visitation with J.C. and he had taken on a true parenting role, while J.C.'s maternal aunt had failed to follow through on medical and dental visits and was not providing adequate care to the child. In January 2025, the court found Father had made a prima facie showing of changed circumstances to support his motion and set the matter for a hearing.

In February 2025, the Agency filed a report recommending the juvenile court grant Father's section 388 motion, vacate the letters of guardianship for J.C.'s maternal aunt, place J.C. in Father's care, and order weekly supervised visitation with Mother. The Agency documented Father's continued visitation with J.C., including two overnight visits per week, and his participation in J.C.'s medical appointments. The report stated J.C. had

6

language delays and had been recommended for speech therapy. J.C.'s maternal aunt refused to engage in speech services and had not been consistent in getting J.C. to his medical, dental, and developmental appointments. The maternal relatives had been late dropping off and picking up J.C. during visits with Father. Father had ensured J.C. attended his medical appointments and allowed him to receive speech services in Father's home during visits. The Agency reported a contentious relationship between Father and J.C.'s maternal aunt. During this time, Mother maintained consistent supervised visitation with J.C. and helped with bathing and bedtime.[3]

In February 2025, the juvenile court granted Father's section 388 motion, terminated legal guardianship, and placed J.C. in Father's care. The court ordered visitation with Mother, to be supervised by J.C.'s maternal aunt, and directed that maternal aunt could have visits with or without Mother's presence.

V.

*Termination of Dependency Jurisdiction and Exit Custody Orders*

In May 2025, the Agency recommended the juvenile court order that J.C. remain in Father's custody and terminate dependency jurisdiction. The Agency's recommendation was based on the excellent care Father was providing to J.C. Father was providing for J.C.'s medical, educational, developmental, and emotional needs. Father facilitated J.C.'s behavioral and therapeutic services and enrolled him in a therapeutic preschool. Father was in full compliance with his case plan, including submitting to drug testing

---

[3] The Agency's report appears to mistakenly identify Mother by the name of J.C.'s maternal aunt. It is clear from the context of the report, however, that the reference is to Mother engaging in visitation with J.C.

7

and completing parenting classes. Father continued to have a contentious relationship with the maternal family and Mother had not maintained consistent communication with the Agency. Mother, however, had visited with J.C. on occasion. J.C.'s court appointed special advocate agreed with the Agency's recommendation.

On May 28, 2025, the juvenile court held the contested family maintenance review hearing. Mother requested joint legal custody, to which Father objected. Father premised his objection on the facts that Mother had limited communication with the Agency, did not participate in most visits with J.C., and had never involved herself in J.C.'s medical, dental, educational, or developmental affairs. Counsel for the Agency and J.C. both submitted the issue of joint legal custody to the court. J.C.'s counsel noted that the typical recommendation is for joint legal custody when the noncustodial parent has visitation rights but recognized joint legal custody may be difficult in this case due to the contentious relationship between the families.

The juvenile court found the conditions that justified the initial assumption of dependency jurisdiction no longer existed, those conditions were not likely to recur if supervision is withdrawn, and that placement with Father would not be detrimental to J.C. Accordingly, the court terminated jurisdiction and issued exit orders regarding J.C.'s custody. The court ordered primary physical custody to Father, joint legal custody to Father and Mother, and reasonable supervised visitation to Mother. In ordering joint legal custody, the court explained Mother was "not . . . actively involved" with J.C. but she had not "thwart[ed]" his access to educational and developmental services and there was no finding she had been "detrimental in exercising her legal rights to make decisions for [J.C.]" The court denied Mother's request

8

to name J.C.'s maternal aunt as an approved supervisor for Mother's visits, and did not award any visitation rights to any maternal family members in the exit orders.

Father timely filed a notice of appeal, challenging only the court's order of joint legal custody.

DISCUSSION

When a juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders, also known as exit orders. (*In re Chantal S.* (1996) 13 Cal.4th 196, 202–203.) These exit orders must be based on the best interests of the child (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 (*Jennifer R.*)), considering "the totality of [the] child's circumstances" (*Chantal S.*, at p. 201). The juvenile court, "which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions." (*Jennifer R.*, at p. 712.) Thus, the family law presumption favoring joint custody does not apply to juvenile court exit orders. (*Id.* at pp. 711–713.)

The juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.) We review a juvenile court's exit orders for abuse of discretion and will not disturb the order unless the court's determination was arbitrary, capricious, or patently absurd. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 [cleaned up].)

9

By awarding joint legal custody to Father and Mother, the juvenile court allowed both parents to "share the right and the responsibility to make the decisions relating to the health, education, and welfare of [J.C.]" (Fam. Code, § 3003.) Father argues this was an abuse of discretion. In support of his argument, he cites Mother's history of substance abuse, the alleged efforts by Mother and her family to conceal the dependency proceedings from Father, and the ongoing tensions between Father and Mother's family. In addition, Father alleges that Mother and J.C.'s maternal aunt did not facilitate J.C.'s access to the developmental services he needed and limited Father's access to J.C., thereby obstructing his efforts to obtain services for him. We find no abuse of discretion, as the juvenile court's order for joint legal custody is supported by the record and is not arbitrary, capricious, or patently absurd.

Father has not pointed to any evidence that Mother is unable to make decisions regarding J.C.'s welfare in conjunction with Father, as contemplated by the joint legal custody order. There is no evidence Mother made detrimental decisions regarding J.C.'s medical, dental, educational, developmental, or mental health needs. And Father has not shown there exists any evidence that Mother interfered with J.C.'s access to services or with Father's ability to make decisions about those services. To the extent the record shows Mother participated in J.C.'s life at all, it was in the form of supervised visitation, during which she was always attentive and met J.C.'s needs. As reflected in the record, Mother did not participate at all in decisions regarding J.C.'s medical, dental, educational, developmental, or mental health needs, let alone participate in such a way as to be detrimental to J.C. or to obstruct Father.

10

Nor has Father shown that Mother's history of drug use is indicative of her inability to make appropriate decisions about J.C.'s health, education, and welfare pursuant to the joint legal custody order. Although Mother's drug use resulted in her being limited to supervised visitation, Father has not cited any evidence correlating Mother's drug use with an inability to exercise joint legal custody rights with Father.

To the extent Father has cited any evidence that J.C. was denied needed services, that Father's participation in the dependency proceedings or his ability to make decisions about J.C.'s needs were obstructed, or that his relationship with the maternal family was contentious, the evidence relates to the actions of J.C.'s maternal aunt and other family members. These maternal family members were not granted any rights in the exit orders and, thus, their actions are not material to our review. And, as we will explain, the evidence Father relies on in support of his arguments does not relate to any specific actions taken by Mother.

Specifically, Father cites to references in the record indicating J.C.'s maternal aunt, not Mother, declined speech services for J.C., obstructed Father's attempt to enroll J.C. in school, and was not consistent in getting J.C. to his medical, dental, and developmental appointments. Father also cites instances in the record in which he alleged the maternal family actively concealed the dependency proceedings from him. His allegations of concealment directly related to Mother, however, do not suggest she took any specific actions to conceal the case after the dependency petition was filed. Lastly, Father cites to complaints that maternal family members were late for drop off and pick up during visitation periods. Yet, nowhere in the cited portions of the record does it suggest Mother was responsible for the tardiness of her family members during visitations.

11

Finally, Father cites in support of his argument *Jennifer R., supra*, 14 Cal.App.4th at pp. 706–707 and *In re Maya L.* (2014) 232 Cal.App.4th 81, 102–104, two cases where juvenile court orders for sole legal custody were upheld on appeal. Findings by other courts based on distinguishable facts that an award of sole legal custody was not an abuse of discretion do not guide our result here. As we have explained, the circumstances unique to this case demonstrate no abuse of discretion.

DISPOSITION

The orders are affirmed.

DO, Acting P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.